## ELZAPHAN TAFT *versus* THOMAS BUFFUM *et al.*

A conveyance by a partner, of his interest in all the personal and real estate of the firm, to one of his copartners, does not *ipso facto* dissolve the copartnership; it is only evidence *tending to show a dissolution.*

ASSUMPSIT on a promissory note, dated November 24, 1828, signed by Thomas Buffum & Co., and payable to the plaintiff.

The defendants plead in abatement, that if they made any such promise, it was with Horace Buffum. On this point issue was joined.

The persons sued were Thomas Buffum, William Buffum junior and Benedict Arnold. At the trial, before *Morton* J., it was proved that these persons, with Horace Buffum, entered into copartnership in 1825, in the business of manufacturing cotton; that they were the owners of the greater part of a cotton mill at Northbridge, and the lessees of another at Fitchburg, which were in operation; that their business was to manage the concerns of these mills; that they had a counting-house in Providence, Rhode Island, where Horace transacted the concerns of the company, such as shipping the goods, buying stock, drawing drafts, making bills, &c., which he continued to do until the 6th of June 1828, when he conveyed to Thomas his interest in the whole personal and real estate of both these establishments. It was testified, however, that notwithstanding this conveyance, Horace still continued a member of the firm and transacted their business in the same manner as before, until January, 1829, when the company failed. On the 11th of August, 1828, Horace and the three defendants, by the name of Thomas Buffum & Co., mortgaged their machinery in Fitchburg to the Smithfield Union bank. On the 13th of January, 1829, these four persons, under the name of Thomas Buffum & Co., assigned their estate, real and personal, at Fitchburg, to Thomas Burgess and Peter Platt, for the benefit of their creditors. On the same day Thomas Buffum, William Buffum and Benedict Arnold, under the name of Thomas Buffum & Co., conveyed the real estate at Northbridge, by a separate deed, to the same assignees, and this

deed is referred to in the first mentioned deed of assignment. There was no other proof than the above, of any acts under the deed of June 6th, or of any knowledge thereof on the part of William Buffum and Benedict Arnold ; nor any other proof of more than one company doing business under the name of Thomas Buffum & Co., than what arises from the last mentioned deeds.

*Morton* J. instructed the jury, that the deed of the 6th of June, from Horace to Thomas Buffum, dissolved the copartnership as to Horace.

The jury returned a verdict for the plaintiff, and the defendants objected to the above instruction.

*B. Adams, J. Davis* and *Washburn* argued that the deed of June 6th did not operate a dissolution of the partnership, for Horace still continued to furnish his skill and labor and credit, and there was still a community in profit and loss.  3 Kent's Com. 3 ; Montag. on Partn. 3 ; *Kingman* v. *Spurr*, 7 Pick. 235.  If the deed had been given to a stranger to the firm, it would have dissolved the partnership.  *Marquand* v. *New York Man. Co.*, 17 Johns. R. 535 ; *Ketcham* v. *Clark*, 6 Johns. R. 144.

*Newton contrà.*  Where a partner's contribution to the partnership fund, consists of labor and skill and property, the subduction of either without the consent of his copartners, is a dissolution of the firm.  *Ex parte Smith*, 5 Ves. 295 ; *Whitman* v. *Leonard*, 3 Pick. 177 ; *Griswold* v. *Waddington*, 15 Johns. R. 57 ; *Waters* v. *Taylor*, 2 Ves. & Beame, 300. The conveyance by Horace Buffum to Thomas Buffum, being made without the knowledge of the other two copartners, was a fraud upon them.  Previously to that conveyance one-fourth only of the partnership fund was liable for the debts of Thomas, and subsequently, one half.  The circumstance that the conveyance was made to one of the firm and not to a stranger, is immaterial, for Horace no longer had the same control over the property, nor probably the same zeal to promote the interest of the company.  This was a change in the partnership concerns which was not contemplated by the copartners.

PUTNAM J. delivered the opinion of the Court (*Morton* J. dissenting.)  If it could be maintained that an individual, who

*Taft*
*v.*
*Buffum.*

*Oct. 3d.*

*Oct. 7th*

had no property in the stock of a copartnership, (other than what might arise in the shape of profits,) could not legally be considered as a partner, it would seem to follow, that the instruction given by the judge who tried this cause, in respect to the operation of the deed from Horace to Thomas Buffum, would be correct.   But we know of no authority to that point, and we think the position is not tenable.   In fact, the skill and services of an individual may be justly valued as a full share of the stock which the others who associate with him, may put or bring into the common enterprise.   At any rate, the proportion would be regulated by the associates, at the time of forming their connexion.   For example, suppose four persons, A, B, C & D, associate for a common object or business. If A, B & C have each $1000 property and bring that into the joint concern, and D has not a dollar of property, but possesses skill which the other three associates should consider to be worth $1000, if employed for the joint use of the concern, so long as it should be carried on, under such circumstances, if the parties should accordingly commence upon the business, each to share profit or loss equally, we cannot doubt but that D would be legally a copartner ; as much so as he would have been if he had put $1000 into the stock, instead of contributing his skill in the management of the business.   How much of the stock should be taken by each at the dissolution of the partnership, would depend upon the agreement of the associates.   It might be that D should only carry away his share of profits, or he might have a percentage upon the stock.   It might be, that he having nothing to bring to the establishment at first, but his skill and services, his proportion of profit and loss might be rated at less than one quarter part ; or if the skill were of a high order, it might be well rated at more.   That would be altogether a matter to be settled by the associates. But D would be as much a copartner, whether he was to have a fourth or a fortieth part of the profits.   Again ; suppose that at the time of making the agreement of partnership, D had $500, and each of the others $1000, and that D's skill should be estimated at $500, and that they were to share profit and loss equally, but that in the prosecution of the work it should be manifest that D's skill and services were greatly underrated,

and the other associates should therefore agree that he should take out his $ 500 for his own use, which sum should be supplied by his associates, and the same division of profit and loss should be made as before. We think that such an arrangement would not *necessarily* operate as a dissolution of the connexion. We have seen that it might originally have been good and binding. It would be like any other distribution of the funds among the individuals, or some of them, composing the copartnership. The whole stock of the common concern would be liable to creditors, and the individuals would be also personally liable, jointly and severally, to the creditors. A majority of the Court are of opinion, that the deed of Horace to Thomas Buffum of the 6th of June, 1828, did not *necessarily* operate as a dissolution of the partnership, which the case finds was in existence when it was made. I would however state here, that our confidence in this point is somewhat lessened from the consideration, that our learned brother who tried the cause, retains the same opinion which he then entertained, that the deed did necessarily operate as a dissolution. A majority of the Court are of opinion, that it was evidence in the case, which might or might not prove a dissolution, as other facts might be proved in the case, all of which should have been left to the jury, to determine the fact whether the copartnership had been dissolved or not. For example ; if after the deed, Horace had ceased to have any concern in the establishment, had entered into other business on his own separate account, or as it might be, had removed to a foreign country or place, and there carried on business for himself or lived upon his own funds or otherwise, upon such evidence we should all think that the jury ought to find that the copartnership was dissolved. On the other hand, if (as in the present case it is found) Horace, after his deed to Thomas, continued to act as a partner, making himself liable as such by drafts and other partnership business, just as he had done before the giving of such deed, then it would seem to a majority of the Court, that the jury ought to find that the partnership was not dissolved. For the reasons before mentioned, a majority of the Court are of opinion, that the verdict should be set aside and a new trial granted